IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JESSICA SLICE-SADLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-cv-216 |
| | ) | |
| PRINCIPAL LIFE INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff Jessica Slice-Sadler ("Plaintiff") initiated this action on January 9, 2015, in state court, asserting various state law claims involving a disability insurance policy issued by Defendant Principal Life Insurance Company ("Defendant" or the "Company"). (ECF No. 1 ¶ 1.) Defendant removed the action to this Court on the basis of diversity jurisdiction. (Id. ¶¶ 6, 7.) The parties have resolved all matters in dispute except for the amount of the maximum monthly benefit to which Plaintiff is entitled under the policy in question.[1] Before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. (ECF Nos. 45, 46.) For the reasons discussed below, the Court denies Defendant's motion, and grants Plaintiff's motion.

---

[1] As part of the parties' mediated settlement, Plaintiff agreed to amend her complaint to narrow the issues presented to this Court. On May 23, 2016, Plaintiff filed said amended complaint, (ECF No. 41 at 10), and Defendant filed an amended answer on June 16, 2016 (ECF No. 44 at 14).

I.  **BACKGROUND**

The Disability Income Insurance Policy (the "Policy"), that is the subject of this lawsuit, was issued to Plaintiff by Defendant on July 16, 2009. (ECF No. 46-2 ¶ 9.) The initial maximum monthly benefit under the Policy when issued was $4,750.00. (ECF No. 45-3 at 47.) Plaintiff purchased two policy riders that would allow for increases in her monthly benefit: (1) a Future Benefit Increase Rider (the "FBI Rider") and (2) a Benefit Update Rider (the "BU Rider"), both of which are incorporated into the Policy. (ECF No. 46-4 at 2; ECF No. 45-3 at 26-27.) The FBI Rider allows Defendant to offer Plaintiff annual increases in her monthly benefit in exchange for higher premiums. The BU Rider allows for a benefit increase every three (3) years from the date the policy was purchased. An insured cannot receive an increase under both Riders in a given year. Between June 2010 and June 2014, Defendant offered and Plaintiff accepted five annual increases in her monthly benefit, raising her monthly benefit from $4,750 to $6,600.[2] (ECF No. 45-2 ¶¶ 5, 7, 8, 10, 12, 15, 18, 19.)

Plaintiff became ill in the summer of January 2011, and by January 2012 her symptoms caused her to formally reduce her workload to part-time. (ECF No. 46-2 ¶¶ 12–17.) By April of 2012, Plaintiff could no longer work at all. (Id. ¶ 18.) Plaintiff was ultimately diagnosed with Postural Orthostatic Tachycardia Syndrome. (Id. ¶ 23.) She later

---

[2] Plaintiff received a benefit increase under the Benefit Update Rider in July of 2012, three years after purchasing the Policy. Because the Benefit Update Rider uses the same operative language as the Future Benefit Increase Rider, the five (5) benefit increases Plaintiff accepted between 2010 and 2014 will be analyzed together, and reference will only be made to the FBI Rider. (See ECF No. 45-3 at 26–27.)

learned that her diagnosis was secondary to a genetic condition called Ehlers-Danlos Syndrome, and was told that it would likely be permanent. (Id. ¶¶ 29–30.)

On May 10, 2012, Plaintiff submitted a claim to Defendant for disability benefits under the Policy claiming that she had a Residual Disability[3] as of January 10, 2012 and Total Disability as of April 14, 2012. (ECF No. 46-2 ¶¶ 32–33.) On August 27, 2012, Defendant notified Plaintiff that the Company had determined she was not disabled as defined by the Policy. (Id. ¶ 34.) On or about February 6, 2013, Plaintiff appealed Defendant's denial of her claim. (Id. ¶ 36.) After hiring a private investigator to follow Plaintiff for several days, acquiring all of Plaintiff's medical records, and conducting its own independent medical examination, on December 9, 2013, Defendant again notified Plaintiff that she was not disabled and denied her appeal. (Id. ¶¶ 37–40.) On January 9, 2015, Plaintiff initiated this litigation. (Id. ¶ 41.) Though Defendant initially contested that Plaintiff was disabled, after extensive discovery, in February 2016 Defendant agreed that Plaintiff suffers from a Residual Disability and was therefore eligible for benefits under her Residual Disability Rider. (Id. ¶¶ 43, 47.) What is not resolved is the amount of maximum monthly benefit to which Plaintiff is entitled under the Policy.

On this sole remaining issue Plaintiff, in her summary judgment motion, contends that the maximum monthly benefit to which she is entitled under the policy is $6,600.00.

---

[3] A "Residual Disability," as defined in the Policy, means "not Totally Disabled; and . . . unable to work Full Time in Your Occupation[.]" (ECF No. 45-3 at 24.)

Defendant contends in its cross-motion for summary judgment that the maximum minimum benefit to which Plaintiff is entitled is $5,475.00.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the nonmoving party bears the burden of proof on an issue, the moving party is entitled to judgment as a matter of law if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (noting that a "complete failure of proof" on an essential element of the case renders all other facts immaterial).

Where, as in this case, the Court has before it cross-motions for summary judgment, the Court reviews each of them separately to determine if either party is entitled to judgment as a matter of law. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

## III. DISCUSSION

Because the Court has subject matter jurisdiction in this action based on diversity of citizenship, it looks to North Carolina's choice of law principles to determine which state's substantive law applies. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941). Under North Carolina law, where the parties' dispute involves an insurance policy, the state in which the policy was issued governs the dispute. See Roomy v. Allstate Ins. Co.,

4

Case 1:15-cv-00216-LCB-JLW   Document 55   Filed 09/29/16   Page 4 of 9

123 S.E.2d 817, 820 (N.C. 1962). The policy in this case was issued in North Carolina, and thus North Carolina law applies.

### A. Overview of North Carolina Insurance Law

In North Carolina, an insurance policy is a contract, and its terms govern the parties' rights and duties. Fidelity Bankers Life Ins. Co. v. Dortch, 348 S.E.2d 794, 796 (N.C. 1986). "The primary goal in interpreting an insurance policy is to discern the intent of the parties at the time the policy was issued." Register v. White, 599 S.E.2d 549, 553 (N.C. 2004) (quoting Woods v. Nationwide Mut. Ins. Co., 246 S.E.2d 773, 777 (N.C. 1978)). The party seeking benefits under the policy bears the burden of demonstrating coverage. Fortune Ins. Co. v. Owens, 526 S.E.2d 463, 467 (N.C. 2000). Interpretation of an insurance policy is a question of law for the court. Allstate Ins. Co. v. Runyon Chatterton, 518 S.E.2d 814, 816 (N.C. App. 1999).

Where "the terms of the policy are 'plain, unambiguous, and susceptible of only one reasonable construction, the courts will enforce the contract according to its terms.'" Register, 599 S.E.2d at 553 (quoting Klein v. Avemco Ins. Co., 220 S.E.2d 595, 597 (N.C. 1975)). However, if the language of the policy is ambiguous, the ambiguity should be resolved in favor of the insured. Id. In construing an insurance policy, an ambiguity exists "when either the meaning of [the] words or the effect of provisions is uncertain or capable of several reasonable interpretations." Id. (citing Woods, 246 S.E.2d at 777). Even if the words appear clear, if the specific facts of a case create more than one reasonable interpretation, an ambiguity exists. Id. (citing Pleasant v. Motors Ins. Co., 185 S.E.2d 164, 166 (N.C. 1971)). In construing the language of the insurance policy, courts look to what a

5

reasonable person in the position of the insured would have understood the policy to mean. Id. (citing Grant v. Emmco Ins. Co., 243 S.E.2d 894, 897 (N.C. 1978)).

**B. Analysis**

The language in the FBI Rider that is relevant to the issue presented here, is as follows:

> This rider provides the opportunity to increase the Total Monthly Benefit. Increases are offered on each Option Anniversary during a Term, subject to the Limitations and Conditions provision in this rider.
>
> Any increase to the Total Monthly Benefit resulting from this rider will be effective on the Option Anniversary for which it is offered, subject to the Acceptance And Rejection Of An Offer provision of this rider.
> …
> Increases are accepted by paying the new premium.
> …
> **LIMITATIONS AND CONDITIONS**
>
> 1. The adjusted Total Monthly Benefit applies to *new Disabilities* which start on or after that Option Anniversary. A Recurring Disability is not a new Disability.
> …
> 3. Increases *will not be offered* for any Option Anniversary on which You are Disabled . . . .

(ECF No. 46-4 at 1-2) (emphasis added).

Defendant argues that the language of the policy is clear and unambiguous and that according to the Policy, Plaintiff's monthly benefit should reflect the last benefit increase accepted before she filed her claim for disability in May 2012. The last increase would be the benefit increase offered and accepted in July, 2011 of $5,475 per month. Defendant maintains the terms of the Policy reflect that benefit increases do not apply to disability claims already filed. According to Defendant, Plaintiff is not eligible for the increases in 2012 ($6,150), 2013 ($6,400), and 2014 ($6,600), since Plaintiff filed her disability claim in

6

May of 2012, and therefore all benefit increases after that time would only pertain to "new Disabilities." (ECF No. 50 at 9.) Defendant points to Paragraph 1 under Limitations and Conditions as the language in the Rider's provision supporting the Company's position that "[i]t is undisputed that the Policy rider[] under which Slice obtained benefit increases state[s] in plain language that any benefit increases apply to disabilities which start *on or after* the date[s] of the increase." (ECF No. 50 at 6.) According to Defendant, there is no way to read the language to mean anything other than what it says.

Plaintiff argues, on the other hand, that the Policy is ambiguous; that such ambiguity must be resolved in her favor; and that a reasonable person would not read the Policy and conclude that a denied disability claim would be ineligible for benefit increases that had been offered and accepted. (ECF No. 46-1 at 12–17.) According to Plaintiff, because Defendant offered and she accepted benefit increases every June up to and including 2014, her monthly benefit should reflect the most recent acceptance of Defendant's offer before a determination that she is disabled, which is $6,600 per month. Finally, Plaintiff argues that Defendant cannot "retract" her monthly benefit increases under the terms of the Policy. (Id. at 14.)

Contrary to Defendant's argument, there is no language in either the Policy or the FBI Rider that addresses whether benefit increases apply to claims that have been denied, in this case, for years and then are later accepted. Nor does the language in Paragraph 1 of the Limitations section establish that a "new Disability" begins when a claim is made as Defendant contends. Rather, that term is undefined in the Policy, except to the extent that a recurring disability is not a new disability. Therefore, it was reasonable for Plaintiff to

7

conclude, absent explicit language in the Policy, that a "new Disability" begins when a claimant is determined disabled, irrespective of when the claim is made. Additionally, it is reasonable for Plaintiff to conclude that accepting offers for increased benefits would actually increase her benefits should Defendant ever accept her claim for disability. Finally, Paragraph 1 of the Limitations provision in the FBI Rider appears to have been written to prevent claimants from receiving an increase in benefits on a "Recurring Disability" for which they already received benefits. That is not the issue in this case. Here, Defendant had neither determined Plaintiff to be disabled nor was Defendant paying benefits on her claim of disability at the time the Company offered the increased benefits each year.

Further, the express terms of Paragraph 3 under the FBI Rider's Limitations section of the Policy suggest a reading that if an offer of an increase in benefits is made and accepted, a claimant is not Disabled as defined by the Policy. (ECF No. 46-4 at 2.) This section reads: "Increases will not be offered for any Option Anniversary on which You are Disabled[.]" (Id.) It reasonably follows that, if an offer is made, the claimant is not considered disabled by Defendant, meaning claimants are not considered "Disabled" under the policy until Defendant accepts a claim, not when the claim is originally filed. To conclude that Defendant can deny claims while accepting the premiums for increased benefits, but not be held responsible for the increased benefit when a claim is acknowledged years later, would essentially reward insurance companies for denying claims until they are litigated into submission.

8

The Court concludes that Plaintiff is entitled to and Defendant is liable for a monthly benefit of $6,600 under the Policy and Rider, and further that Plaintiff is entitled to summary judgment as a matter of law.

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (ECF No. 45) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (ECF No. 46) is GRANTED.

IT IS FURTHER ORDERED that Defendant shall pay Plaintiff her accepted monthly benefit of $6,600.

This, the 29th day of September, 2016.

    /s/ Loretta C. Biggs
United States District Judge